IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS PONTIUS,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          Civil Action No. 04-1737
                                    )          Judge Gary L. Lancaster
DELTA FINANCIAL CORP., d/b/a        )          Magistrate Judge Lisa Pupo Lenihan
FIDELITY MORTGAGE INC.,             )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment be granted as to Defendant financial corporation's entitlement to exemption from the overtime requirements of the Fair Labor Standards Act as a "retail or service establishment".  It is further recommended that Plaintiff's Motion be denied on the far *closer* question of whether a reasonable jury could conclude, based on the evidence of record, that Defendant has met its burden to *establish* that the employees in question were exempt from overtime compensation under the "administrative" employee exemption.  Because the Report recommends denial of complete summary judgment as to Defendant's violation of the Fair Labor Standards Act, it also recommends denial of Plaintiff's request for summary judgment on his entitlement to liquidated damages.

It is respectfully recommended that Defendant's Motion for Summary Judgment be

granted as to the sufficiency of the employees' compensation under the "salary basis" test, the first of three conditions under the administrative employee exemption, but denied as to the remaining two conditions.  It is further recommended that Defendant's Motion be denied as to Defendant's "retail or service establishment" status.

## II.  <u>REPORT</u>

This class action  involves claims related to Defendant's alleged illegal failure to pay overtime compensation to its loan officers and/or mortgage analysts (hereafter collectively referred to as "Mortgage Analysts") in accordance with the relevant provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA").

Pontius (the "Plaintiff" or "Named Plaintiff") attests that he and other Mortgage Analysts located in Defendant's  nation-wide branch offices and/or call centers are improperly classified as "exempt" employees under the FLSA and therefore not paid overtime.  He further asserts that the position in which he is employed is primarily a sales position, and does not require or permit the significant exercise of individual discretion or authority necessary to excuse Defendant from responsibility for overtime payment.  Defendant maintains that the Mortgage Analysts are properly treated as exempt from overtime either because (a) they are primarily customer-service providers, akin, *e.g.*, to an in-house securities broker providing investment advice to the brokerage firm's clients, and thus excluded from the FLSA's overtime requirements by the "administrative employee" exemption, or (b) they are primarily sales agents in an enterprise

which is now, owing to changing circumstances, entitled to FLSA overtime exemption as a "retail or service establishment".

First, it is clear that as a financial corporation engaged in the business of creating and selling lending products, *e.g.*, mortgage loans, to individuals, Defendant is a financial industry enterprise. As Plaintiff ably briefs, and as this Court's research affirms, such enterprises are outside the scope of the retail or service enterprise exemption. Defendant's assertions of changing times and open-ended and/or outdated Supreme Court case law and agency regulations notwithstanding, two of the three Federal Courts cited by the parties as recently considering this question have reached the same conclusion. The third distinguished a mortgage brokerage firm that exclusively brokered as one, unlike Defendant, not engaged in the design and sale of loans; it was therefore unnecessary in that case to reach the continued validity/applicability of the Supreme Court, Congressional and Department of Labor ("DOL") precedent challenged by Defendant. Accordingly, it is recommended that summary judgment be granted to Plaintiff on the question of Defendant's purported entitlement to exemption from the FLSA's overtime requirements on the basis of the "retail or service establishment" exemption.

Second, it is clear in light of the statutory/regulatory law and the Department of Labor's November 27, 2006 Opinion Letter - signed by the Administrator and referring to itself as an "interpretation" of the applicable regulations - that Defendant is entitled to summary judgment as to the first of three conditions required to meet the administrative exemption, *i.e.*, the "salary basis" test. It is equally clear, however, that Defendant is unentitled to summary judgment as to the remaining two conditions required under these regulations. Indeed, to the contrary, as

suggested above, this Report found the question of *Plaintiff's* entitlement to summary judgment on one or both of these factors to be extremely close. It is recommended, however, with careful attention to the summary judgment standard, that Plaintiff's request for summary judgment on the administrative exemption be denied.

Third, although Plaintiff requests summary judgment on an entitlement to liquidated damages, to which the class is entitled if Defendant fails to show good faith and reasonable grounds for believing it was not in violation of the FLSA, denial of complete summary judgment on the question of an FLSA violation dictates denial of summary judgment as to liquidated damages as well. Accordingly, it is recommended that Plaintiff's Motion for Summary Judgment be denied in this final respect.

### A.  **Statement of Facts and Procedural History**

As discussed above, this is a civil class action for relief in consequence of Defendant's alleged illegal failure to pay overtime compensation to a class of employees whose position significantly entails telephoning Defendant's potential home mortgage customers, taking information necessary to the loan application, running the Company's computer program ("Click and Close") to determine what loan package(s) may be offered to that potential customer based on the financial information provided, and compiling customer documents for forwarding to a "loan processor" and thence to an underwriter.  More particularly, it is Plaintiff's position, well-supported by the evidence of record, that Mortgage Analysts employ Defendant's internal leads, guidelines, and standard operating procedures (including  Defendant's loan parameter software

and/or other computer technology) to try to match a potential customer's needs with one of Defendant's loan products in order to make a sale.  To do so, they necessarily compile the customer's financial information (*e.g.*, income and equity levels, credit history) and discuss with that customer the qualifying and operating conditions/terms of particular loans.  Again as well-supported by the evidence of record, the Mortgage Analysts are hired, trained, earn commissions, and are otherwise successful in their positions, on the basis of their sales performance.  They are paid a base salary plus commissions, with commissions earned subject to off-set for failure to meet a minimum sales goal in a prior pay-period.

Defendant maintains that Plaintiff misrepresents the Mortgage Analyst position, which involves "considerable" individual authority and discretion to structure and customize loan packages, and is therefore properly treated as exempt from the overtime requirements of the FLSA under the administrative employee exemption.  Alternatively, Defendant maintains that the position is a sales position entitled to exemption under the retail or services establishment exemption.

The case is currently before the Court on the parties' cross-motions for Summary Judgment. Plaintiff's Motion for Summary Judgment was initially filed in April, 2006, but withdrawn while the parties explored resolution.  It was refiled in August of last year, at which time Defendant's Motion for Summary Judgment was also filed.  In addition, an *amicus* brief was filed on October 17, 2006 by the Mortgage Bankers Association (the "MBA").  The *amicus* brief attaches a September 8, 2006 Opinion Letter issued by the Department of Labor in response to a request that (a) appears designed to assert foreclosure of the Court's evaluation of some

issues presented in this case, and (b) further appears to have complied more fully with the letter than perhaps with the spirit of the guidelines for requesting an agency opinion.  See *infra* n. 17.

### B.  <u>Summary Judgment Standard</u>

In deciding a motion for summary judgment, the Court considers whether the non-moving party has - through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any - established a genuine issue of material fact sufficient for a reasonable jury to find in his favor.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 252 (1986).  The non-moving party may not rest upon factually unsupported allegations contained in its pleadings; however, all inferences must be drawn and all doubts resolved in his favor.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986); <u>Colburn v. Upper Darby Townshp.</u>, 946 F.2d 1017, 1020 (3d Cir. 1990).  Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment.  <u>Anderson</u>, 477 U.S. at 248.   If the non-moving party fails to present evidence sufficient to establish an "element essential to that party's case, and on which that party will bear the burden of proof at trial", summary judgment is appropriate.  <u>Celotex</u>, 477 U.S. at 322.  The Court may grant summary judgment, however, only in the case of an absence in the record of any genuine issue of material fact and "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" may not decide a "ruling on a motion for summary judgment."  <u>Anderson</u>, 477 U.S. at 255.

C. **Analysis**

The FLSA establishes as a general rule that employees must be compensated one and one-half times their regular rate of pay for each hour worked in excess of 40 hours per week. See 29 U.S.C. §§ 207(a)(1).[1]  The provision does not apply, however, to employees who fall within one of the exemptions set forth under the Act.  Defendant asserts that it is entitled to exemption in this case under either the "retail or service establishment" exemption or the "administrative employee" exemption.

Owing to the remedial nature of the FLSA, exemptions under the Act are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowksy, Inc., 361 U.S. 388, 392 (1960); Auer v. Robbins, 519 U.S. 452 (1997); Martin v. Cooper Electrical Co., 940 F.2d 896 (3d Cir. 1991).  The burden is on the employer to establish that it is clearly entitled to the benefit of an exemption and excused from the general overtime payment provision.  Mitchell v. Kentucky Finance Co., 359 U.S. 290, 291 (1959); Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1070 (1st Cir. 1995); Martin v. Cooper Electrical Co., 940 F.2d 896, (3d Cir. 1991) (holding that burden of proving exemptions is on employer and ' if the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden") (citing Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S.

---

1. The Named Plaintiff was employed as a loan officer in Defendant's Pittsburgh, Pennsylvania call center.  He asserts that he and similarly-situated employees routinely worked in excess of forty (40) hours per week with no overtime compensation.

190 (1966)).  See also Casas v. Conseco Finance Corp., 2002 WL 507059, *3 (D. Minn. Mar. 31, 2002).[2]

1.  Retail or Service Establishment Exemption of  29 U.S.C. § 213; 29 C.F.R. § 207(i)

As noted, *supra*, Defendant asserts that the Mortgage Analysts are commissioned sales employees within the retail or service establishment exemption of § 207(i).  This regulatory section generally affords certain enterprises exemption from overtime if: (a) the regular rate of pay of the employee is in excess of one and one-half times the minimum hourly rate applicable to him/her under § 206, and (b) more than half the employee's compensation for a representative period (of not less than one month) is commissions on goods/services.

In order to qualify for treatment under § 207(i), however, Defendant must first establish that it is a "retail or service establishment" entitled to consideration under this section.  This it cannot do.

In Mitchell v. Kentucky Finance Co., 359 U.S. 290 (1959), the United States Supreme Court expressly held that financial companies, *e.g.,* banks, credit companies and personal loan

---

2.  In this well-reasoned opinion involving approximately 2900 "loan originators", the Federal Court for the District of Minnesota considered many of the arguments raised by the parties *sub judice* in a similar case involving Conseco Finance Corporation's failure to pay said employees overtime compensation.  See discussion, *infra*.

In Conseco, the loan originators called potential customers from a list provided by the employer and, using guidelines and standard operating procedures, obtained information such as income level, home ownership history, credit history and property value; ran credit reports; forwarded the application to an underwriter; and attempted to match customer needs to employer loan products.  If the underwriter approved the loan, the originator gathered documents, verified the information, and ordered title work and appraisals.  The District Court concluded the employees were non-exempt.

companies, are not retail or service establishments within the meaning of a "retail or service establishment" exemption under 29 U.S.C. §213.[3]  In so holding, the Court noted the Department of Labor's 1942 Interpretive Bulletin ruling that financial industry enterprises such as personal loan companies are outside the exemption.  The Supreme Court further observed that the legislative history of Congress' 1949 amendment to the exemption clearly indicated that it "does not exempt banks, insurance companies, building and loan associations, credit companies . . . because there is no concept of retail selling or servicing in these industries."  Id. at 295.   And this definition of "retail or service establishment" as excluding financial enterprises  was carried-over with Congress' enactment of § 207(i) in 1961.  See Reich v. Delcorp, Inc., 3 F.3d 1181, 1184 (8th Cir. 1993); Casas v. Conseco Finance Corp., 2002 WL 507059 (D. Minn. Mar. 31, 2002); 29 C.F.R. §§ 779.312; 779.411.[4]

Subsequent thereto, the Department of Labor has promulgated regulations governing the interpretation of "retail or service establishment."  See 29 C.F.R. § 779.318 (explaining that such establishments typically sell goods/services to the general public to meet everyday community needs, do not take part in a manufacturing process, and are at the end of the distribution stream - such as grocery or clothing stores, restaurants, hotels, and repair shops).  The regulations also detail some establishments "to which the retail concept does not apply", among them "credit

---

4.  See also Barnett v. Washington Mutual Bank, 2004 WL 1753400, *6 (N.D. Cal. Aug. 5, 2004) (explaining that the Supreme Court in Mitchell "did not hold that credit companies were not retail or service establishments because the [DOL] had concluded they were not; rather the Court held that when Congress amended the FLSA it specifically adopted the [DOL]'s pre-1949 rulings").

companies, including small loan and personal loan companies and finance companies." <u>Id.</u> at §

779.317 (citing <u>Mitchell</u>).[5]

Defendant contends, as did the defendant loan enterprise in <u>Conesco</u>, that neither

<u>Mitchell</u> nor the regulations are controlling.  More particularly, Defendant contends that both

leave open the possibility that, with changing times, its modern finance enterprise may now

properly be considered under the multi-factor test of § 779.318 and held by this Court to be

exempt as a retail or service establishment.  In so urging, Defendant points primarily to its

essentially intra-industry characterization as a retail establishment, and federal cases which

applied § 779.318 despite reference, in § 779.317, to that type of enterprise as broadly excluded.

<u>See</u>, *e.g.*, <u>Martin v. Refrigeration School, Inc.</u>, 968 F.2d 3 (9th Cir. 1992) (refrigeration trade

schools); <u>Reich v. Delcorp, Inc.</u>, 3 F.3d 1181 (8th Cir. 1993) (carpet and drapery cleaner);

<u>Rachal v. Allen</u>, 376 F.2d 999, 1003 (5th Cir. 1967) (air transportation industry); <u>Reich v. Cruises</u>

<u>Only, Inc.</u>, 1997 WL 1507504 (M.D. Fla. 1997) (travel agencies).

After review of the applicable case law and statutory/regulatory materials, this Report

finds Defendant's assertions unpersuasive.  Not one of the above cases on which Defendant urges

reliance considered the possible reclassification of finance enterprises as retail or service

---

5.  <u>See</u> <u>also</u> 29 C.F.R. § 779.317 (noting that while there are "types of establishments in
industries where it is not readily apparent whether a retail concept exists . . . [i]t is possible . . . to
give a partial list of establishments to which the retail concept does not apply").

establishments.  Each regarded a different industry and distinguishable legal precedent/history.[6]

And of the three federal cases identified as recently considering the §7(i) exemption with respect

to the finance and mortgage loan industry, two have concluded that the United States Supreme

Court, Congress and the Department of Labor have meant - and continue to mean - what they

said, *i.e.*, that personal loan companies are not sufficiently similar in character to retail

establishments to avail themselves of the exemption.  See Barnett v. Washington Mutual Bank,

2004 WL 1753400 (N.D. Cal. Aug. 5,2004);[7] Casas v. Conseco Finance Corp., 2002 WL 507059

(D. Minn. Mar. 31, 2002).  The third case,  Gatto v. Mortgage Specialists of Illinois, Inc.,442

F.Supp.2d 529 (N.D. Ill. 2006), while questioning the continued applicability of the definition

excluding the financial industry, nonetheless expressly accepted it in accordance with the weight

---

6.  See Casas, 2002 WL 507079 at *5 ("recognizing that several courts have voiced disapproval
of regulation §779.317" but concluding that, given the Supreme Court's decision in Mitchell,
"the inclusion of financial companies" in that regulation "carries more weigh" than merited by
the legal history as to the other industries); id. (noting post-1949 Congressional amendments
respecting treatment of laundries and importance of altered treatment to the Eighth Circuit's
decision in Delcorp) (citing Delcorp, 3 F.3d at 1182-86); Takacs v. A.G. Edwards and Sons, Inc.,
444 F.Supp.2d 1100, 1115 (S.D. Cal. 2006) (noting that the Ninth Circuit, in Martin, "did not
find the entire [§779.317] list to be arbitrary, but rather limited its treatment of the list as it
pertains to schools only").

7.  In Barnett, the California District Court noted that the DOL has "specifically determined that
. . . personal loan companies, are not retail or service establishments for the purpose of the
FLSA."  Id. at *5.  The Court further concluded that, in granting plaintiff's motion for summary
judgment on the §7(i) exemption, it was "following the dictates of Congress, the Supreme Court
and the Ninth Circuit."  Id. at 6.

of authority.[8]  The <u>Gatto</u> Court went on to conclude, however, that the mortgage brokerage

business at issue was not part of the "financial industry" because it was not in the business of

making/selling loans but merely assisted in obtaining (rather than providing) them.[9]  <u>Compare</u>

<u>Mitchell</u>, 359 U.S. at 290-21 (focusing on non-availability of retail exemption to defendant

engaged in lending money to individual consumers).[10]

 As Defendant is "undeniably a financial company" in the business of making and selling

loans, it "falls squarely" within <u>Mitchell</u>, and exclusion from a §7(i) exemption is in accordance

with applicable Congressional and agency history, as well as Supreme Court precedent.  It is

therefore recommended that Plaintiff be granted summary judgment on Defendant's asserted

§207(i) defense.  <u>See</u> <u>Casas</u>, 2002 WL 507059 at * 5.  <u>See</u> <u>also</u> <u>id.</u> (observing that arguments

---

8.  <u>See</u> <u>id.</u> at 538-39 (noting that the Seventh Circuit had not spoken to the issue, and precedent
in the Eighth and Ninth Circuit supported following the financial-industry-exclusive definition
"and the regulations built upon it"); <u>id.</u> (citing <u>Delcorp</u>, 3 F.3d at 1183, in which the Eight
Circuit held that it would "not conclude that Congress [ in its 1989 revisions] retained the term
'retail or service establishment' in § 207(i) yet at the same time discarded thirty years of
established meaning"); <u>id.</u> (citing <u>Gieg v. DRR, Inc.</u>, 407 3d 1038, 1045 (9th Cir. 2005)).

9.  <u>See</u> <u>id.</u> at 534, 539 (finding defendant entitled to summary judgment for both reasons: (a)
plaintiff failed to produce evidence demonstrating work in excess of 40 hours per week, and (b)
defendant was excused from overtime compensation to plaintiff under the retail and services
exemption because it was not part of the "financial industry", but was a "*nonfinancial
intermediary*" as described by the Illinois Residential Mortgage License Act) (emphasis in
original).

10.  <u>See</u> <u>also</u> <u>Bennet v. SLT/TAG, Inc.</u>, 2003 WL 23531402 (D. Or. March 8, 2003) (following
<u>Mitchell</u> and holding that employee who sold financing, service contracts, insurance and other
financial products was not engaged in the retail sale of goods or services for purposes of §7(i));
<u>Takacs v. A.G. Edwards and Sons, Inc.</u>, 444 F.Supp.2d 1110, 1115-16 (S.D. Cal. 2006)
(concluding that financial consulting firm was excluded from "retail or service establishment"
exemption by Congressional intent and § 779.317).

regarding changes in the nature and operation of the financial industry since <u>Mitchell</u> are more appropriately addressed to/by Congress or the Department of Labor).

 

2.  <u>Administrative Employee Exemption of 29 U.S.C. § 213; 29 C.F.R. § 541</u>

In accordance with the provisions of the FLSA, the overtime requirements do not apply to "any employee employed in a *bona fide* . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1).  An employee qualifies for this exemption if (a) s/he meets the salary basis test and minimum compensation; (b) his/her "primary duty" is the performance of office or non-manual work directly related to management policies or general business operations of the employer or the employer's customers; and (3) such primary duty includes work requiring the exercise of discretion and independent judgment.  <u>See</u> 29 C.F.R. § 541.200.

(a)  <u>Salary Basis Test</u>

An employee is paid "on a salary basis" if she receives a predetermined amount of minimum compensation each pay period that is not subject to being reduced because of the "quality or quantity of the work performed."  29 C.F.R. § 541.118(a).  When Plaintiff's Motion for Summary Judgment was initially filed, *i.e.*, April 20, 2006, there was authority for Plaintiff's position that Defendant failed to meet this first requirement of the administrative exemption because the salary payments made to the Mortgage Analysts were not "free and clear" but were subject to off-set against commissions earned in subsequent pay-periods.  More particularly, the District of California held, in <u>Takacs v. A.G. Edwards and Sons, Inc.</u>, 444 F.Supp.2d 1100 (S.D. Cal. 2006), that a draw/deduction compensation plan did not meet the salary basis test because

the minimum compensation was not "free and clear".  See id. at (holding that salary basis test was not met where guaranteed draw was loan against future commissions, and subsequent deductions were an impermissible offset).  In so holding, it relied in part on a March 4, 1971 Opinion Letter that an employer "may not satisfy the salary requirement by adopting an offset method whereby deficits in earned commissions are carried forward or earned commissions are held in reserve." Id. at 1119.

However, on November 27, 2006, the Department of Labor issued, under the signature of the Administrator, an Opinion Letter providing an "interpretation" of the applicable regulation and clarifying that (i) the "salary basis" test for an administrative overtime exemption is met where the employees receive a guaranteed pre-determined payment of at least the applicable minimum and said amount is not subject to reduction; and (ii) this arrangement still qualifies for exemption even if compensation in *excess* of the minimum (*e.g.*, additional commissions) may be offset by carry-forward of an earnings/sales quota deficit in a prior pay period.[11]  The November 27, 2006 interpretive Opinion Letter expressly provides that prior agency opinions to the contrary, including the May 4, 1971 Opinion Letter relied upon in Takacs, are - to the extent inconsistent with the Department's new interpretation - withdrawn.

Because the Department has now interpreted the applicable regulation in a manner which clearly encompasses the compensation arrangements in the instant case, and because such

---

11.  See Defendant's December 22, 2006 Notice of Supplemental Authority.  See also November 27, 2006 Opinion Letter at n. 5 (describing itself as an "interpretation").

interpretation is a well-reasoned and accurate interpretation entitled to deference,[12] Defendant's request for summary judgment on this factor of the administrative employee exemption should be granted.[13]

      (b) <u>Primary Duty Test</u>

      In general, the regulations define an employee's "primary duty" as the principal main, major, or most important duty based on all the facts in a particular case, with a major emphasis on the "character of the employee's job as a whole." 29 C.F.R. § 541.700.[14]

      The requirement that the employee's "primary duty" be "directly related to management policies or general business operations" has generally been understood to refer to the administrative operations of a business as distinguished from "production" or "sales" work. This has been referred to as the "administrative/production dichotomy", and the regulations further delineate these types of exempt and non-exempt work by differentiating between (i) employees engaged in "servicing" a business (*e.g.*, "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control") and

---

12. <u>See</u> discussion of deference, *infra*.

13. To the extent Defendant also asserts this Opinion Letter provides significant authority in its favor on the remaining two elements of the exemption, this Report disagrees. To the contrary, the November 27, 2006 Opinion Letter relates to registered stock brokers who must uniformly pass qualification/licensing examinations on securities laws, economic and risk theory, portfolio theory/analysis, and taxation. They are typically retained on the basis of their securities-related education and/or expertise. These employees primarily provide individual investment advice to their firm's clients based on complex and fluctuating market conditions, individual investment portfolio objectives and consequences, tax ramifications, and timing impacts/alternatives. Incident to their provision of client investment advice and related portfolio design services, these securities brokers execute stock transactions and market/service the brokerage firm's products. <u>See</u> discussion *infra*.

14. This mode of assessment explicitly adopted the approach used by the Fourth Circuit in <u>Counts v. South Carolina Elec. & Gas Co.</u>, 317 F.3d 453 (4th Cir. 2003).

(ii) those engaged in producing or generating "the very product or service that the employer's business offers to the public".  29 C.F.R. § 541.205(b); <u>Conseco</u>, 2002 WL 507059 at *6.  <u>See also</u> <u>Martin v. Cooper Elec. Supply Co.</u>, 940 F.2d 896 (3d Cir. 1991);[15] <u>Reich v. Chicago Title Insur. Co.</u>, 853 F.Supp. 1325 (D. Kan. 1994);  <u>Haywood v. N. Am. Van Lines, Inc.</u>, 121 F.3d 1066, 1072 (7th Cir. 1997).

---

15.  In this leading case, the Third Circuit considered whether employees who worked for an electrical product wholesaler qualified for exemption where they made telephone sales with some authority to deviate from computer-generated price quotes based on a customer's purchase history and/or item availability/cost.  The Third Circuit concluded the plaintiffs were employed to produce sales of electrical products (the defendant's primary business) and held they were non-exempt.  <u>See</u> <u>id.</u> at 902-04.

It should be noted that the DOL's 2004 regulations do not change this "primary duty" definition linking administrative work "with the running or servicing of the business versus selling a product".  Tilson & Glenn, <u>The FLSA: Emerging Trends in Wage and Hour Litigation</u>, 746 PLI 571, October 2006.

The Report concurs with Defendant's observation that the administrative/production dichotomy is not an exclusive method for assessing the "primary duty" factor of an administrative employee exemption. <u>See</u>, <em>e.g.</em>, <u>Bothell v. Phase Metrics, Inc.</u>, 299 F.3d 1120, 1126 (9th Cir. 2002) (concluding that the dichotomy is a useful piece of the larger inquiry, and that the courts should construe the statutes and applicable regulations as a whole); <u>Takacs v. A.G. Edwards and Sons, Inc.</u>, 444 F.Supp.2d 11 (S.D. Cal. 2006) (citing <u>Bothell</u>'s direction that the administrative/production dichotomy be applied in conjunction with an assessment of the employees' "advising . . . planning, negotiating, and representing" activities). To the extent, however, that Defendant or the MBA rely upon the DOL's "production vs. staff" comments to the 2004 revised FLSA regulations in support of a non-determinative usage of the dichotomy, they err.  <u>See</u>, <em>e.g.</em> Defendant's Reply Memorandum at 2-3 (citing 69 Fed. Reg. 22,141 (April 23, 2004) (DOL comments to the 2004 revised FLSA regulations stating the "Department's view that the production <em>vs. staff</em> dichotomy is one analytical tool that should be used toward answering the ultimate question and is only determinative if the work falls squarely on the production side of the line").  This comment refers <em>not</em> to the administrative/production dichotomy employed in a "primary duty" factor analysis, but to the production/staff dichotomy employed in considering the "independent judgment" factor.  <u>See</u> Tilson & Glenn, <em>supra</em>, at 594.

In addition, the regulations further provide that employees in the "financial services" industry" generally meet the administrative duties test if said employees (i) collect/analyze financial information, (ii) determine the best products for the client/advise the client, and (iii) market and service the employer's financial products.  See 29 C.F.R. § 541.203.  They expressly require, however, that if an employee's "primary duty is *selling* financial products" that employee "does not qualify for the administration exemption."  Id. (emphasis added).

The 2004 Preamble to § 541 cites with approval three leading cases in which employees in the financial services industry were held to be "administrative employees" exempt from overtime compensation.  Each involved insurance agents or insurance marketing representatives. In Hogan v. Allstate Ins. Co., 361 F.3d 621 (11th Cir. 2004), the Eleventh Circuit concluded that insurance agents who "spent the majority of their time" servicing and advising *existing* policy holders, and who also adapted client policies as appropriate, decided on advertising budgets/techniques, hired and trained and set compensation levels for staff, and delegated routine matters and sales to staff, were within the exemption.  Similarly, in Wilshin v. Allstate Insur. Co., 212 F.Supp.2d 1360 (M.D. Ga. 2002), the District Court dismissed a religious discrimination, retaliation and FLSA action concluding, in part, that a neighborhood insurance agent who provided claims help to existing policy holders, represented the company and handled public relations, and directed the day-to-day affairs of the branch office (such as selection/lease of office location, collecting and accounting for premium payments), in addition to selling insurance products, was exempt.  Finally, in Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997), the First Circuit held that insurance marketing representatives who primarily

cultivated/facilitated relationships with licensed independent third party agents (who in turn recommended multiple companies' products to end-purchasers) were administrative employees engaged in representing and promoting the company "generally", in comparison to employees "focused simply on particular sales transactions".  Id. at 10.

Plaintiff asserts, and well supports, that the Mortgage Analysts' primary duty is to generate loan sales, that they do not assist in the administrative operation of the business, must follow standard operating procedures and guidelines, and are evaluated and compensated on the basis of their sales performance.   Their position is, therefore, flatly distinguishable from those of the insurance industry employees in the cited cases.[16]

Finally, as noted earlier, the MBA's *amicus* brief attaches a September 8, 2006 Department of Labor Opinion Letter issued in response to a request made by the MBA in September, 2005.[17]  In its request, the MBA described the mortgage loan officers as to which it sought assessment of entitlement to an administrative employee exemption as follows: such employees (a) work with the employer's customers to identify and secure loans appropriate to their individual circumstances by analyzing and assessing financial information, (b) advise customers of risks and benefits, (c) respond to and follow-up on customer inquiries, (d) spend

---

16.  Compare also Jastremski v. Safeco Insur. Co., 243 F.Supp.2d 743 (N.D. Ohio 2003) (discussing claims adjuster who investigated, made covered loss determinations, negotiated settlements, and had independent settlement authority); Palacio v. Progressive Insur. Co., 244 F.Supp.2d 1040 (C.D. Cal. 2002).

17.  The MBA accurately represented that the opinion was not "being sought by a party to pending private litigation concerning the issue addressed" therein.  The request presents, however, a factual hypothetical strikingly similar to Defendant's characterization of the facts *sub judice*.

less than 50% of their time "selling" mortgage loan products,[18] (e) use technology to help evaluate loan qualification, but (f) remain responsible for recommending the best products to meet customer needs.  The DOL concluded that such loan officers would fall within the administrative employee exemption.  It also observed, of course, that its "application" of the regulations to MBA's hypothetical was based on the facts/circumstances described in the request letter.

The MBA now asserts in its *amicus* brief that, because the Mortgage Analysts' duties are substantially similar to those of the typical mortgage loan officer hypothesized to the DOL - as evidenced by Defendant's chart comparing their duties - the Court should defer to the DOL's Opinion Letter as a matter law.   It further asserts that, as the DOL's own "interpretation" of an *ambiguous* regulation, the Court must, under <u>Chevron</u> and/or <u>Auer v. Robbins</u>, 519 U.S. 452 (1997), give "substantial deference" to the agency's September 8, 2006 Opinion Letter.  And it suggests that the Opinion Letter is therefore dispositive.[19]  <u>See</u> <u>also</u> Defendant's Reply

---

18.  The MBA elects to define "selling" financial products as "customer-specific persuasive sales activity", which it further delineates as either (a) persuading a prospective customer to borrow from Defendant rather than a competitor, or (b) soliciting a mortgage loan from a prospective customer absent any prior expression of interest, *e.g.*, cold call prospecting.

19.  <u>See</u> *Amicus* Brief (asserting that the Court should defer to the September 8, 2006 Opinion Letter "as a matter of law").  <u>Cf.</u> <u>Martin v. Cooper Elec. Supply Co.</u>, 940 F.2d 896, 900 (3d Cir. 1991) (observing that whether salespersons fell within the administrative employee exemption was "a mixed question of law and fact").  <u>See</u> <u>also</u> *Amicus* Brief (asserting that "[t]he DOL's conclusions in the Opinion Letter require substantial deference because they are interpretations of ambiguous regulations that the DOL itself promulgated).

A court must give effect to an agency's *regulation* containing a *reasonable* interpretation of an *ambiguous* statute.  <u>See</u> <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-44 (1984); <u>Martin v. Cooper Elec. Supply Co.</u>, 940 F.2d 896, (3d Cir. 1991) (recognizing that DOL *regulations* interpreting the FLSA "constitute the agency's 'body of experience and informed judgment' about the statute, and so, they should be given 'considerable

Memorandum at 1, n. 3 (asserting that the Court should "defer to the 2006 DOL Opinion [under Auer] and award summary judgment to [Defendant]").

(1) The facts of the *amicus* hypothetical submitted to the DOL and the facts at issue *sub judice* are, the record evidence strongly suggests, not substantially similar.  To the extent the

---

and in some cases decisive weight'") (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

In Christianson v. Harris County, 529 U.S. 576, 587 (2000), the Supreme Court held that agency interpretations of statutes which are not arrived at after a formal adjudication or notice-and-comment rulemaking do not warrant Chevron deference, but are instead entitled to "some respect" to "the extent that those interpretations have the 'power to persuade'".  See also Barnett v. Washington Mutual Bank, 2004 WL 1753400 (N.D. Cal. Aug. 5, 2004) (discussing Chevron and Christianson).  The MBA distinguishes Christianson, as guiding the limited deference due to an informal agency interpretation of a *statute*, asserting that, under Auer, the DOL's informal interpretation of its own *regulations* is entitled to "great weight".  See *Amicus* Brief at 7 (citing 9th and 10th Circuit cases).  Compare, *e.g.*, Hogan v. Allstate Insur. Co., 361 F.3d 621, 628 n. 8 (11th Cir. 2004) ("DOL Opinion Letters should be considered and given due deference, but they are persuasive authority only - not binding.") (citing Arriaga v. Florida Pac. Farms, 305 F.3d 1228, 1238-39 (11th Cir. 2002)); Kilgore v. Outback Steakhouses of Fla., Inc., 160 F.3d 294 (6th Cir. 1998) (stating that opinions of the Administrator of the DOL have persuasive value if they are thoroughly considered and well-reasoned); Jastremski v. Safeco Ins. Co., 243 F.Supp.2d 743, 753 (N.D. Ohio 2003) (giving deference to Administrator's Opinion Letter because it was a "thorough, well reasoned, and accurate interpretation of the regulations").  This Court's review of the case law and commentary regarding the degree of deference due a particular agency interpretation indicates that the jurisprudence is extensive, complicated and fraught with inconsistencies and disagreements.

In its recent discussion of the question and related precedent, however, the Supreme Court has reiterated that, under Auer, "[a]n administrative rule may receive substantial deference if it interprets the issuing agency's own ambiguous regulation."  Gonzales v. Oregon, 546 U.S. 243 (2006) (noting that, in Auer, the DOL's *amicus* brief was accorded weight as to its interpretation of the "salary basis" test, a "creature of the [DOL]'s own regulations"); id. (noting that the interpretation was "controlling unless plainly erroneous or inconsistent with the regulation").  See also Camphill Soltane v. Dept. of Justice, 381 F.3d 143, 148 n. 4 (3d Cir. 2004) (noting, in INS case, that, under Auer, an agency interpretation of a regulation in a format lacking the force of law warrants Chevron-style deference).  See *supra* at 22 (discussing application of Auer).

Report correctly understands the MBA to assert Defendant's entitlement to judgment on the basis of Defendant's charted but disputed factual assertions and characterizations, it finds such assertion striking in its novelty.  Moreover, there appears to be significant dissimilarity between the Mortgage Analysts' specific job parameters and those of the financial service industry employees found exempt in the Opinion Letter.

In addition, despite the efforts of the MBA and Defendant to analogize the Mortgage Analysts' duties to those of individuals who principally provide services to employer customers (*e.g.*, securities/investment services or insurance services), the positions appear quite distinguishable.  For, as Plaintiff evidences, while the Mortgage Analysts compile and analyze potential loan customer information, doing so is necessary to evaluate the customers' qualifications for a loan, *i.e.*, to make a sale.  See also *Amicus* Brief at 9 (noting that "in order to achieve a sale" a mortgage loan officer must analyze needs, communicate advantages and disadvantages of proposed loans, and promote the employer's financial services).[20]  Although Defendant and/or its *amicus* contests that the employees' "motivations" or "objectives" for compiling/analyzing customer financial information is irrelevant, a distinction between the tail

---

20.  While a brokerage firm's client may take the portfolio analysis and/or investment advice proffered by his account representative/stock broker and employ it, with little or no further ado, to his benefit at the brokerage firm or quite readily elsewhere - *i.e.*, he can realize the benefit of the financial compilation/analysis services provided by the securities broker - the same may not be said of the prospective mortgage loan customer.  Should he decline the loan vehicles for which he qualifies with Defendant, he will most likely undergo the same financial compilation procedure elsewhere.  In essence, the Mortgage Analysts are *screening* for the benefit of the employer, rather than *servicing* for the benefit of the customer.  Nor is there is any suggestion in the record of a Mortgage Analyst's independent duty to/relationship with the prospective customer.  Compare *infra*, n. 27 (noting agency's current and historical references to "a customer's man in a brokerage house").

and the dog *is* fundamental to application of a regulation that bases exemption from overtime compensation on the nature of an employee's "primary duty".[21]

   (2) The September 2006 Opinion Letter is an "application" not an interpretation. As such it is not entitled to the deference which Defendant asserts is to be accorded an agency's own interpretation of an ambiguous regulation under Auer. The MBA, in addition to perhaps oversimplifying the law regarding deference to agency interpretations, ignores an important distinction between (i) an agency's reasonable "interpretation" of an ambiguous regulation, *i.e.*, its proclamation of what the regulation *means*, and (ii) that agency's "application" of a regulation to a particular hypothetical, *i.e.*, the inherent gap filing that always occurs when a general rule is applied to a particular circumstance. The DOL, however, observes this distinction. Compare November 2006 Opinion Letter at n. 5 at 1 (referring to itself as providing an "interpretation" of the "salary basis" test) with September 2006 Opinion Letter (referring to itself as providing an "application" of the administrative exemption to "certain . . . mortgage loan

---

21. See Tilson & Glenn, The FLSA: Emerging Trends, *supra* at 596 (discussing numerous collective actions "over mis-classification in the financial services industry" and observing that large-figure settlements "indicate[ ] uncertainty regarding the fine line between an exempt administrative employee in the financial services industry and the non-exempt employee whose primary duty is selling financial products"). See also generally Mark Tabakman, The Department of Labor Takes Aim at the Banking Industry, 118 Banking L.J. 798 (Oct. 2001) (discussing recent cases in which the DOL has taken the position that certain bank employees, including loan originators/officers, are "production" workers entitled to overtime compensation); id. at 804-05 (discussing DOL's application of same non-exempt concepts to the "mortgage banking industry").

Compare November 27, 2006 Department of Labor Opinion Letter (concluding that securities brokers met administrative exemption where they "engage[] in some sales activities" subsidiary to compiling and analyzing client financial information to provide expert investment advice); id. (noting that some securities brokers are compensated on the basis of total account values, without regard to their executed sales/trades).

officers").  In addition, even if the Opinion Letter were properly considered an interpretation within the scope of Auer, the MBA's assertions that (a) the regulations are ambiguous because they fail to distinguish between "selling financial products" (a disqualifying primary duty) and other "conduct that facilitates sales"; and (b) either these Mortgage Analysts must be exempt as "administrative employees" or none can be, are unsound.  See Amicus Brief at pp. 11-12.  The issue at hand is not about a failure to distinguish between the MBA's narrowly-defined "sale" and other activities; it is about the *primary nature* of those other activities.  Moreover, as discussed *supra*, the factual circumstances of the Opinion Letter hypothetical and the case *sub judice* are not undisputedly comparable; to the contrary. Accordingly, this Report does not give controlling or substantial deference to the Administrator's September 2006 opinion that the administrative employee exemption encompasses the loan officers described in the MBA's hypothetical.

In sum, because genuine issues of material fact remain as to the nature and extent of the particular duties and responsibilities of Defendant's Mortgage Analysts and Defendant's establishment of its entitlement to exemption, and because the Report does not - within the appropriate summary judgment parameters - conclude it impossible that a reasonable jury could find in Defendant's favor on this question, summary judgment on the "primary duty" element of the administrative employee exemption should be denied to both parties.[22]

---

22.  Cf. Casas, 2002 WL 507059 at *9 (concluding that loan originators making direct contact with customers to sell lending products and identify, modify, structure and process loans, were production employees engaged with "the day to day carrying out of the business") (citing Bratt v. County of Los Angeles, 912 F.2d at 1070); id. (noting that plaintiffs' focused on particular sales transactions).  See also generally Martin v. Cooper Elec. Supply Co., 940 F.2d 896 (3d Cir. 1991) (concluding that telephone sales employees did not "negotiate", "servic[e] the business" or "represent" the company within the meaning of the administrative employee exemption).

(c) <u>Discretion and Independent Judgment Test</u>

As noted *supra*, the third factor of the administrative employee exemption requires that the employee's primary duty include the exercise of "discretion and independent judgment". It "also implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." <u>See</u> 29 C.F.R. § 541.200(a); 541.207(a). In comparison, "an employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specific standards are met or whether [something] falls into one or another of a number of . . . categories is not exercising discretion and independent judgment within the meaning of . . . the regulations." <u>Id.</u>[23]

The November 27, 2006 Opinion Letter certainly supports, as Defendant asserts, the rather unremarkable proposition that neither (i) the use of computer software and/or technology, nor (ii) a duty to comply with applicable laws and employer guidelines, *of itself* disqualifies from administrative exemption an employee who is nonetheless responsible for assessing alternatives and making independent recommendations. <u>See</u> Opinion Letter (stating that, *e.g.*, use of computer software that does not select the mortgage loan product "does not necessarily

---

23. <u>Cf.</u> § 541.205(c)(2) (noting that an employee "does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial loss if the employee fails to perform the job properly"); Tabakman, *supra*, 118 Banking L.J. at 800-801 (discussing "crucial difference" between employee who utilizes skill and experience, *e.g.*, in applying established standards, guidelines, techniques and/or procedures, and employee who exercises discretion and independent judgment); <u>id.</u> at 801 (distinguishing an employee "applying certain designated and fixed criteria to given situations, which is only skill, not discretion").

disqualify" an administrative employee from exemption).[24]  Similarly, the September 8, 2006

Opinion Letter obtained by the MBA concludes that the use of underwriting software programs

to assess risk and to narrow the scope of products available does not disqualify mortgage loan

officers from the exemption where "these tools do not substitute for the discretion and judgment

required of the loan officer."

      The facts of record strongly suggest, however, that the Mortgage Analysts lacked the

discretion and independent judgment necessary to qualify for the exemption.  Plaintiff's

evidence indicates that the Mortgage Analysts were significantly restricted/limited by

Defendant's pre-existing and established operating procedures and guidelines in, *e.g.*,

determining which lending products to offer and on what terms.  See discussion, *supra*; Casas,

2002 WL 507059 at *10.

Compare November 27, 2006 Opinion Letter (discussing the brokers' use of knowledge and

expertise in securities to perform multi-factor analyses regarding facilitation of the clients'

investment objects given, *e.g.*, financial status, risk tolerance, age, tax considerations, and

fluctuations in market conditions);[25] In re Farmer's Insurance Exchange, 2006 WL 3026037 (9th

---

24.  Here again, the MBA's assertion that Defendant is entitled to summary judgment on this element on the basis of evidence that supports Defendant's claim that the "Click and Close" program merely "calculates loan terms and ensures compliance with underwriting guidelines", with no mention of Plaintiffs' significant evidence to the contrary, rather turns the summary judgment standard on its head.  See *Amicus* Brief at 14; see also *supra* p. 15.  Moreover, its assertion that the November 2006 Opinion Letter is "conclusive" or controlling as an interpretation of an ambiguous regulation is erroneous for reasons addressed above.

25.  Cf.  69 Fed. Reg. 22,146 (April 23, 2004) (DOL comments to the 2004 revised FLSA regulations stating that approach to financial services employees is "consistent with existing § 541.207(d)(2), which provides that 'a *customer's man in a brokerage house*'" exercises discretion and independent judgment ' in deciding what recommendations to make to customers for the purchase of securities'") (emphasis added).

Cir. Oct. 26, 2006) (finding factor met by insurance adjusters who exercised discretion as to, *e.g.*, losses covered, set-aside reserves, determinations of blame/fault, and negotiations with an insured and his/her counsel).

Accordingly, for reasons akin to those set forth above in summation of the "primary duty" element, it is recommended that summary judgment be denied on this third factor of the administrative employee exemption.

3.  Liquidated Damages under 29 U.S.C. §216

When an employer violates the overtime wage provisions of the FLSA, the Act provides for payment of both unpaid wages and an equivalent amount of mandatory liquidated damages. See 29 U.S.C. § 216(b); Martin v. Cooper Electrical Supply Co., 940 F.2d 896, 907 (3d Cir. 1991).  Despite the mandatory language of § 216, however, Congress has provided the courts with some discretion to limit or not award liquidated damages *if and only if* an employer shows "good faith and reasonable grounds" for believing that it was not violating the Act.  Martin, 940 F.2d at 907 (citing 29 U.S.C. § 260 (Portal-to-Portal Act)); Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982).

In order to exercise its discretion under § 260, a district court must make findings consistent with its requirements.  Id.  The defendant bears the burden of proving - by coming forward with "plain and substantial evidence" - its entitlement to discretionary relief from the FLSA's mandatory liquidated damages provision.  In addition, the "good faith requirement is a subjective one that 'requires that the employer have an honest intention to ascertain and follow the dictates of the Act'" while the "reasonableness requirement imposes an objective standard by

which to judge the employer's conduct" and under which "[i]gnorance alone will not exonerate" it.  Id. at 907-08 (quoting Williams v. Tri-County Growers, Inc., 747 F.2d 121, 129 (3d Cir. 1984) (citations omitted)).  Thus, "[t]o carry [its] burden, a defendant employer must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions."  Id. at 908.[26]  The employer's burden of proof in this regard is "a difficult one to meet" and "[d]ouble damages are the norm, single damages are the exception."  Id. (quoting with approval Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987) and reversing and remanding for an award of liquidated damages equivalent to employees' unpaid overtime wages); Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986)).

The Report's recommendation of denial of summary judgment as to Defendant's violation of the FLSA dictates, however, a denial of Plaintiff's concomitant request for summary judgment on the question of liquidated damages.

## III.  CONCLUSION

For the reasons set forth above, it is recommended that the Plaintiff's Motion for Summary Judgment be granted as to Defendant's entitlement to exemption as a "retail or service establishment" but denied as to exemption from overtime compensation under the "administrative" employee exemption and, accordingly, also denied as to Plaintiff's entitlement to liquidated damages.

---

26.  See also Tri-County Growers, 747 F.2d at 129 ("[T]he employee need not establish an intentional violation of the Act to recover liquidated damages.  Instead, the employer must affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements.").

It is respectfully recommended that Defendant's Motion for Summary Judgment be granted as to the sufficiency of the employees' compensation under the "salary basis" test, the first of three conditions under the administrative exemption, but denied as to the remaining two conditions.  It is further recommended that Defendant's Motion be denied as to Defendant's "retail or service establishment" status.

In accordance with the Magistrates Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


_____

LISA PUPO LENIHAN
United States Magistrate Judge


Dated: March 20, 2007


cc: Hon. Gary L. Lancaster
    United States District Judge

    All Counsel of Record

-28-